**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRELL CROOMS, JOHN LOPEZ, LATRICE SAXON, and STEPHANIE HILL, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-cv-2149 |
| v. | ) ) | Hon. John Robert Blakey |
| SOUTHWEST AIRLINES CO. and KRONOS, INC., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT SOUTHWEST AIRLINES CO.'S MEMORANDUM IN SUPPORT OF ITS**
**RULE 12(b)(3) MOTION TO DISMISS FOR IMPROPER VENUE**

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................................1

II.     BACKGROUND .........................................................................................................2

     A.     The Complaint and Nature of Plaintiffs' Claims .......................................................2

           1.     Three Plaintiffs were previously represented by a union for the
purpose of collective bargaining with Southwest. .........................................2

           2.     When promoted or hired to supervisory provisions, all four Plaintiffs
signed an arbitration agreement with Southwest. ...........................................4

           3.     In prior litigation, three of these Plaintiffs expressly agreed to
arbitrate their BIPA claims. ...........................................................................5

     B.     Illinois Biometric Information Privacy Act (BIPA) .................................................5

III.    LEGAL STANDARD...................................................................................................6

IV.    ARGUMENT ...............................................................................................................6

     A.     Plaintiffs Lopez, Saxon and Hill's claims should be dismissed under Rule
12(b)(3) because they are preempted by the Railway Labor Act (RLA)................6

           1.     The standard for RLA preemption is extremely low. .....................................6

           2.     Plaintiffs' claims are preempted by the RLA because there are two
non-frivolous arguments that they could be conclusively resolved by
interpretation of the CBAs. ...........................................................................8

     B.     Plaintiffs' claims should be dismissed for improper venue because they
agreed to arbitrate them through Southwest's ADR Program. .............................10

           1.     The standard for compelling arbitration under the Federal Arbitration
Act (FAA) is low. ........................................................................................10

           2.     Plaintiffs entered a valid arbitration agreement. .........................................11

           3.     This dispute falls within the scope of the ADR Program's arbitration
agreement.....................................................................................................11

           4.     The FAA's Section 1 exemption does not apply. .......................................12

     C.     Plaintiffs Crooms, Lopez, and Hill also must honor their agreement, separate
from the ADR Program, to arbitrate their BIPA claims. .......................................15

V.     Conclusion .................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740 (7th Cir. 2007) ............................................................6

*Bhd. of Locomotive Eng'r and Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754 (7th Cir. 2017) ............................................................................6, 7

*Borgonia v. G2 Secure Staff, LLC*, 2019 WL 1865927 (N.D. Cal. Apr. 25, 2019) ...........12, 13, 14

*Brown v. Ill. Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001) ....................................7, 9

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727 (7th Cir. 2005) ................................6

*Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) ...............................13

*Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612 (2018) ..................................10

*Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801 (7th Cir. 2011) ........................6, 10, 15

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991) ........................................10

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994) ....................................6, 7, 9

*Lee v. Postmates, Inc.*, 2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ..........................14

*Mark v. Portfolio Recovery Assoc., LLC*, 2015 WL 1910527 (N.D. Ill. Apr. 27, 2015) ..........................................................................10

*Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir. 1992) ......................9

*Miller v. Southwest Airlines Co.*, 2018 WL 4030590 (N.D. Ill. Aug. 23, 2018) ..................6, 8, 9

*Miller v. Southwest Airlines Co.*, 2018 WL 5249230 (N.D. Ill. Oct. 22, 2018) ........................8, 9

*Moses H Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983) ............................10, 15

*Wallace v. Grubhub Holdings, Inc.*, 2019 WL 1399986 (N.D. Ill. Mar. 28, 2019)......................14

**STATE CASES**

*JetBlue Airways Corp. v. Stephenson*, 2010 WL 6781684, 932 N.Y.S.2d 761 (Sup. Ct. 2010), *aff'd* 931 N.Y.S.2d 284 (2011)......................................................12

*Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738 (Ill. App. 2013)....................................11

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

9 U.S.C. § 1.........................................................................................................................12

9 U.S.C. § 3.........................................................................................................................15

45 U.S.C. § 184......................................................................................................................7

Fed. R. Civ. P. 12(b)(3)..............................................................................................6, 8, 10, 15

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

5 ILCS 70/1.15...................................................................................................................11

740 ILCS 14/5......................................................................................................................5

740 ILCS 14/10...............................................................................................................6, 10

## I.    INTRODUCTION

Defendant Southwest Airlines Co. (Southwest) respectfully moves this Court to dismiss Plaintiffs' claims under FED. R. CIV. P. 12(b)(3) for improper venue because three independent sources of authority require these claims to be arbitrated.

First, the claims of Plaintiffs Lopez, Saxon and Hill are preempted by the Railway Labor Act (RLA). Plaintiffs worked for Southwest at Midway Airport. Before their promotions to supervisory positions, these Plaintiffs worked as ramp agents and all belonged to a union that had a collective bargaining agreement (CBA) with Southwest. Plaintiffs complain that Southwest violated the Illinois Biometric Privacy Act (BIPA) by requiring them, as a condition of employment, to clock in and out of work using a timekeeping system that scanned their fingers. Considering virtually identical facts, however, (*i.e.* the same Defendant, the same union, the same collective bargaining agreements, and the same timekeeping system) a court in this District found plaintiffs' BIPA and related common law claims preempted by the RLA. It held there was a "non-frivolous argument" that plaintiffs, through their union, consented to use of the timekeeping system. And because BIPA does not require new consent each time an employee is promoted, this case is no different. Interpretation of the CBA could conclusively resolve these Plaintiffs' claims; therefore, under the RLA's mandate, this case must be decided by an arbitrator, not the courts.

Second, to the extent Plaintiffs' claims are not preempted by the RLA, they must go to individual arbitration under Southwest's Alternative Dispute Resolution (ADR) program. When Plaintiffs were promoted (or, in the case of Plaintiff Crooms, hired) to supervisory roles, they agreed to submit their future employment-related claims to arbitration, rather than the courts. These ADR agreements are valid and properly enforced through a motion to dismiss for improper venue.

Third and finally, while engaged in a separate litigation (that also should have been an arbitration) Plaintiffs Crooms, Lopez, and Hill entered into a separate agreement that also expressly provided their BIPA claims would be subjected to individual arbitration. That arbitration agreement is enforceable, and inexplicably disregarded by the very same litigation counsel who negotiated and executed it on their behalf.

## II.     BACKGROUND

### A.     The Complaint and Nature of Plaintiffs' Claims

Four Plaintiffs (Darrell Crooms, John Lopez, Latrice Saxon, and Stephanie Hill) brought this lawsuit against their former employer, Southwest. Plaintiffs allege Southwest violated BIPA and is liable for common law negligence because, as a condition of employment, it required Plaintiffs use a timekeeping system that scanned their fingers to clock-in and clock-out of work every day.[1] (Compl. ¶¶ 21, 31–35, Count I, Count II.)

Plaintiffs are citizens of Illinois who worked for Southwest at Midway Airport in Chicago, Illinois as Ramp Supervisors. (*Id*. ¶¶ 2–5, 29.) Plaintiff Crooms worked as a Ramp Supervisor from March 2015 to September 2016. (*Id.* ¶ 30.) Plaintiff Lopez has worked as a Ramp Supervisor from October 2011 to the present. (*Id.*) Plaintiff Saxon has worked as a Ramp Supervisor from November 2016 to the present. (*Id.*) Plaintiff Hill worked as a Ramp Supervisor from June 2016 to November 2017.

### 1.     Three Plaintiffs were previously represented by a union for the purpose of collective bargaining with Southwest.

Before Plaintiffs Saxon, Lopez and Hill were promoted to the position of Ramp Supervisor, they each worked as a Southwest Ramp Agent. (Ex. A, Decl. of Michelle Jordan at ¶ 4.) The Ramp Agents employed by Southwest at Chicago Midway International Airport are

---

[1] Southwest Airlines disputes that its timekeeping system actually collects, retains, purchases, or receives fingerprints, biometric identifiers, or biometric information. But for the purpose of this motion, it recites Plaintiffs' allegations.

2

represented for purposes of collective bargaining by the Transportation Workers Union of America, AFL-CIO Local 555 ("TWU 555"). (*Id.* at ¶ 5.) Southwest and TWU 555 have been parties to collective bargaining agreements, ratified by TWU 555's members, for many years. (*Id.* at ¶ 6.) During these Plaintiffs' employment as Ramp Agents, TWU 555 and Southwest entered into two CBAs, the first dated from June 14, 2001 to June 30, 2006 and the second dated from July 1, 2008 to June 30, 2011 (collectively "the CBAs"). (*Id.*)

The CBAs provide that TWU 555 is the "sole and exclusive bargaining agent" for all Southwest's United States-based Ramp, Operations, Provisioning, and Freight Agents. (*Id.* at ¶ 7, Exs. 1, 2 at Article 2(A).) The CBAs contain a broad management-rights provision that states without further limitation: "The right to manage and direct the work force, subject to the provisions of this Agreement, is vested in and retained by the Company." (*Id.* at ¶ 7, Ex. 1, 2 at 3.) The CBAs also provide Southwest with the right to implement reasonable work rules (*Id.*) and include a mandatory four-step grievance and arbitration procedure for resolution of disputes concerning the effect of the CBAs, which, as required by the RLA, culminates in an arbitration hearing before the System Board of Adjustment. (*Id.*, Ex. 1, 2 at Article 20.)

Before Southwest implemented the timekeeping system about which Plaintiffs complain, in October 2005, it provided TWU 555 with written notice that it would use Kronos 4500 finger-scan time clocks. (*Id.* at ¶ 9, Ex. 3.) Southwest later invited TWU 555 to a presentation on the time clocks (*Id.* at ¶ 10, Ex. 4), at which it demonstrated the Kronos 4500 finger-scan time clock for TWU 555 and provided a power point presentation about the clock. (*Id.* at ¶ 11, Ex. 5.) During the presentation, Southwest explained to TWU 555 that the clocks only collect and store finger-scan algorithms, not fingerprints. (*Id.*, Ex. 5, Talking Points Memorandum.) TWU 555 did not object or seek an amendment to the relevant labor agreements. Thereafter, Southwest began using the Kronos 4500 time clocks at Midway Airport in early 2006. (*Id.* at ¶ 8.) In 2006, a

3

Tampa-based Ramp Agent filed a grievance with TWU 555 and Southwest, objecting to the use of finger-scan timekeeping. (*Id.* at ¶ 11, Ex. 6.) Southwest again communicated with TWU 555 about the Kronos 4500 finger-scan timekeeping (*Id.*, Ex. 7), TWU 555 consulted with an attorney (*Id.*, Ex. 8), and TWU 555 subsequently withdrew the grievance in writing. (*Id.*, Ex. 9.)

### 2. When promoted or hired to supervisory provisions, all four Plaintiffs signed an arbitration agreement with Southwest.

When Plaintiffs were promoted or hired to supervisory roles, they became subject to Southwest's ADR Program. (Ex. B, Decl. of Vincent Vasquez at ¶ 5). The ADR Program applies to "all Southwest employees who are not covered by a collective bargaining agreement." (*Id.* at ¶ 3.) Plaintiffs Saxon and Lopez agreed to the current version of the ADR Program on October 15, 2018 and October 28, 2018, respectively. (*Id.* at ¶¶ 10–11, Exs. 7, 9.) The current version of the ADR Program is attached to the Vasquez Declaration. It requires arbitration of "Covered Claims," which is broadly defined to mean "all legal disputes and legal claims by and between an ADR Employee and Southwest, or between an ADR Employee and any agents or employees of Southwest if Southwest could be liable, directly or indirectly, for such dispute, which exist now or may arise in the future . . . ." (*Id.*, Ex. 2.) It expressly includes claims "arising under the . . . Illinois Biometric Information Privacy Act (BIPA)." (*Id.*) The ADR Program also prohibits class or collective claims or joinder of arbitrations, allowing only individual arbitration. (*Id.*) Plaintiffs Crooms and Hill agreed to the prior version of the ADR Program, on July 26, 2016 and August 14, 2017, respectively. (*Id.* at ¶¶ 8–9, Exs. 3, 5.) Like the current version, the former requires arbitration of "Covered Claims." Although the former version defined "Covered Claims" differently, the term includes "wage and hour claims and claims under state or local leave laws arising out of the employment relationship between Southwest and the ADR Employee." (*Id.*, Ex. 1.)

### 3. In prior litigation, three of these Plaintiffs expressly agreed to arbitrate their BIPA claims.

Plaintiffs Crooms, Lopez, and Hill were previously represented by the same litigation counsel as opt-in plaintiffs in Case No. 18 CH 09376 (Circuit Court of Cook County), alleging BIPA claims against Southwest, and Case No. 18-cv-4822 (N.D. Illinois). Separate from their employment agreements, the plaintiffs in those cases entered into a written agreement with Southwest, agreeing to submit their BIPA claims to AAA arbitration, subject to jurisdictional objections. (Ex. C at ¶¶ 2–3.) That agreement was signed by the Stephan Zouras Firm on behalf of Plaintiffs Crooms, Lopez, and Hill. *See* Ex. C at ¶ 18 ("The below Attorneys represent the Parties identified above their signature block and are authorized to enter into the Agreement on their behalf and on behalf of any co-counsel."); Ex. C at Signature Block ("By and for Plaintiffs Jeff Battles, LeRome Thomas, and Steven Spencer and FLSA Action Opt-In Plaintiffs"); 18-cv-4822 (FLSA Action) at Dkt. 25-1 (opt-in forms for Plaintiffs Hill and Lopez), Dkt. 26-1 (opt-in form for Plaintiff Crooms).

### B. Illinois Biometric Information Privacy Act (BIPA)

BIPA took effect in October 2008. 740 ILCS 14/5. BIPA creates a right of action for any person "aggrieved" by a violation of BIPA. The statute sets forth various requirements for the retention, collection, disclosure, and destruction of "biometric identifiers," a term that it defines to include, inter alia, a "fingerprint." *Id.* at 14/10 (definition of biometric identifiers); *id.* at 14/15 (the various requirements). Relevant here, BIPA requires the entity to "inform[] the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored" and to "receive[] a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* at 14/15 (emphasis added). The statute contemplates its application in the

5

employment context and provides that, rather than informed written consent, an employer may obtain a release as a condition of employment. *See* 740 ILCS 14/10 ("'Written release means informed written consent or, in the context of employment, a release executed by an employee as a condition of employment.").

## III.    LEGAL STANDARD

A motion to dismiss based on a contractual arbitration clause is properly addressed under Rule 12(b)(3). *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011); *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007); *Miller v. Southwest Airlines Co.*, 2018 WL 4030590, at *6 (N.D. Ill. Aug. 23, 2018) (granting motion to dismiss for improper venue because BIPA claims were preempted by federal labor law and CBA that contained arbitration clause). In determining whether venue is proper, this Court "is not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

## IV.    ARGUMENT

### A.    Plaintiffs Lopez, Saxon and Hill's claims should be dismissed under Rule 12(b)(3) because they are preempted by the Railway Labor Act (RLA).

#### 1.    The standard for RLA preemption is extremely low.

The RLA took effect in 1926 and was extended to air carriers in 1936. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994). Congress enacted the RLA to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* at 252; *Bhd. of Locomotive Eng'r and Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017) (Because "[n]o one wants to see the nation's transportation network brought to a standstill," the RLA was "designed to substitute bargaining, mediation, and arbitration for strikes."). To that end, the RLA "sets up a mandatory arbitral mechanism to

6

handle disputes growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Hawaiian Airlines*, 512 U.S. at 248. In view of this important purpose, the RLA contains a "strong preference for arbitration, as opposed to judicial resolution of disputes." *Union Pacific*, 879 F.3d at 755.

This framework mandates that CBAs must be interpreted by arbitrators, not by the courts. *Hawaiian Airlines*, 512 U.S. at 253; 45 U.S.C. § 184 (mandatory arbitration covers "disputes between an employee or a group of employees and a carrier or carriers by air growing . . . out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . ."); *see also Union Pacific*, 879 F.3d at 756 (if a dispute concerns "interpretation or application of an existing agreement, it . . . must go to arbitration"). Thus, even if a plaintiff's claim is "grounded upon rights which stem from some source other than the CBA (such as state law), the claim will be preempted if it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved' by interpreting the CBA." *Brown v. Ill. Central R.R. Co.*, 254 F.3d 654, 658, 661 (7th Cir. 2001) (plaintiff's ADA claim was preempted by RLA because interpretation of CBA's seniority system could potentially be conclusive).

To ensure CBAs are interpreted by arbitrators, rather than the courts, the carrier's burden to show the dispute could be conclusively resolved by the CBA is "quite low." *Union Pacific*, 879 F.3d at 758. All the carrier must do is make a "non-frivolous" argument that interpretation of the agreement is at stake. *Id.* at 756, 758. It may do so with a declaration from its own employee. *Id.* at 759 ("The Railroad's declaration is enough to show that its position is not frivolous, though it may or may not prevail."). This is true even if the facts set forth in the declaration are disputed. *Id.* ("Wading through the competing declarations to determine the actual authority the Railroad had to modify the disciplinary policies, based on past practices, is a job for the arbitrator.").

This standard is not only entrenched in case law, but also logical. After all, if there is a better-than-frivolous argument that interpretation of the CBAs could conclusively resolve the claims, a court could not properly resolve those claims without interpreting the CBAs.

> **2.      Plaintiffs' claims are preempted by the RLA because there are two non-frivolous arguments that they could be conclusively resolved by interpretation of the CBAs.**

Interpreting the same CBA as the one applicable here, a court in this District found that virtually identical claims against Southwest were preempted by the RLA. *See Miller v. Southwest Airlines Co.*, 18-cv-86, 2018 WL 4030590, at *5–*6 (N.D. Ill. Aug. 23, 2018).[2] In *Miller*, union-represented employees asserted BIPA and other state-law claims against Southwest for implementing the same timekeeping system involved in this case. The district court dismissed the claims under Rule 12(b)(3), as preempted by the RLA, because there were two non-frivolous arguments that interpretation of the CBA could conclusively resolve the claims.

In its initial opinion and subsequent opinion denying a Rule 59 motion, the district court explained that the CBA provided that the union was the "sole and exclusive bargaining agent" for all plaintiffs and granted the employer a broad management-rights provision to "manage and direct the workforce." *Id.*; *see also Miller v. Southwest Airlines Co.*, 2018 WL 5249230, at *2 (N.D. Ill. Oct. 22, 2018). Thus, there was a non-frivolous argument that, by granting Southwest the broad management-rights provision, the plaintiffs consented to the implementation of the timekeeping system through their legally authorized representative. 2018 WL 5249230 at *2. There was a second non-frivolous argument that plaintiffs consented to the timekeeping because the union was their "sole and exclusive bargaining agent" and Southwest presented evidence that it notified the union of its intent to implement the timekeeping system in 2005 and the union did

---

[2] The plaintiffs in *Miller* have appealed that decision to the Seventh Circuit. That appeal is pending, with plaintiffs-appellants' reply brief due on May 9, 2019. *See* Case No. 18-3476.

not object. Thus, to determine whether Southwest "collected or captured Plaintiffs' biometric identifiers without informing them *or their legally authorized representative* in writing that the information was being collected and stored," the district court reasoned that it would need to interpret the "sole and exclusive bargaining agent" provision and other CBA provisions to determine "whether [TWU 555] had the right or responsibility to accept notice and consent on Plaintiffs' behalf." *Id.* at *2.

The Seventh Circuit has not yet addressed RLA preemption as applied to BIPA claims, but its *Amoco* decision strongly suggests it will affirm the *Miller* decision. In *Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706, 709–10 (7th Cir. 1992), union-represented employees alleged that their employer invaded their privacy by installing a video camera on the hallway ceiling outside the women's restroom. The camera enabled the employer to record who entered and exited the restroom, but not anything that occurred inside. In deciding that the claims were preempted by the LMRA, the Seventh Circuit rejected plaintiffs' argument that there was no need to interpret the CBA because it said nothing about video cameras. Instead, the Court held that plaintiffs' claims were preempted because the CBA had a residual management-rights clause like those at issue here. Noting that "privacy in the workplace" is "an ordinary subject of bargaining" and that "[t]he extent of privacy is a 'condition' of employment," it explained that a "court could not award damages without first construing the collective bargaining agreement and rejecting [the employer's] interpretation of the management-rights clause." *Id.* at 709.[3]

The same result should issue here. Plaintiffs Lopez, Saxon and Hill belonged to the same union, used the same timekeeping system, and were subject to the same CBA with a broad

---

[3] *Amoco* was a LMRA preemption case, but its logic applies with equal force to RLA preemption. *See Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 667 n.13 (7th Cir. 2001) (applying *Lingle* to resolve question of RLA preemption) ("In *Hawaiian Airlines*, the Court adopted *Lingle*'s standard for addressing LMRA preemption to resolve claims of RLA preemption.").

management-rights clause as the plaintiffs in *Miller*. While Plaintiffs Lopez, Saxon and Hill no longer belong to the union, that is a distinction without a difference. BIPA only requires an employer to obtain consent one time. Nothing in the statute requires employers to obtain a separate consent every time an employee is given a new job title. On the contrary, it permits employers to require consent as a condition of employment. *See* 740 ILCS § 14/10. Therefore, this case is exactly like *Miller* and there are two non-frivolous arguments that these Plaintiffs, who previously belonged to the union, gave their consent to Southwest's implementation of the timekeeping system as a condition of employment, through the union—their legally authorized representative.

**B.      Plaintiffs' claims should be dismissed for improper venue because they agreed to arbitrate them through Southwest's ADR Program.**

**1.      The standard for compelling arbitration under the Federal Arbitration Act (FAA) is low.**

The FAA evinces a long-standing "federal policy favoring arbitration agreements." *Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018). It requires courts to "rigorously enforce" valid arbitration agreements. *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). Where an arbitration agreement exists, "the standard for compelling arbitration is low," *Mark v. Portfolio Recovery Assoc., LLC,* 2015 WL 1910527, at *2 (N.D. Ill. Apr. 27, 2015), such that any doubts concerning the arbitrability of a claim must be resolved in favor of arbitration. *Moses H Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). A party seeking to compel arbitration need only show an agreement to arbitrate, a dispute within the scope of the arbitration agreement, and the opposing party's refusal to arbitrate. *Mark*, 2015 WL 1910527 at *2. It is proper to enforce a contractual arbitration clause through a Rule 12(b)(3) motion to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 807.

10

### 2. Plaintiffs entered a valid arbitration agreement.

Plaintiffs entered a valid agreement to arbitrate their BIPA claims. In Illinois, an enforceable contract requires an offer, acceptance, and consideration. *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738 (Ill. App. 2013). Southwest offered to continue Plaintiffs' employment and resolve its claims against them through arbitration in exchange for their promise to do the same with respect to their BIPA and other employment-related claims against Southwest. (Ex. B at ¶¶ 3, 4, Exs. 1, 2.) Plaintiffs each accepted their offers by electronically agreeing to the ADR Program.[4] (*Id.* at ¶¶ 8–11; Exs. 3, 5, 7, 9.) Accordingly, the arbitration agreements between Southwest and each Plaintiff are valid. The ADR Program covers the essential terms in detail, specifying the applicable rules governing the arbitration process, the claims covered, and the rights retained by the parties. (*Id.*, Exs. 1, 2.)

### 3. This dispute falls within the scope of the ADR Program's arbitration agreement.

Plaintiffs' BIPA claims are subject to the ADR Program. The most recent version of the ADR Program expressly governs Southwest employees' BIPA claims, along with all other employment-related claims. (*Id.*, Ex. 2.) Plaintiffs Lopez and Saxon electronically signed this version. (*Id.*, Exs. 7, 9.)

The earlier version of the ADR Program, to which Plaintiffs Crooms and Hill each agreed (*id.*, Exs. 3, 5.), likewise covers their respective BIPA claims, as it requires Plaintiffs Crooms and Hill to arbitrate any claims related wages and hours, and this dispute centers on the manner in which Plaintiffs were required to record their hours. Therefore, each Plaintiff's BIPA claims fall within the scope of the ADR Program agreement and must be arbitrated.

---

[4] In Illinois, an electronic signature has the same force and effect as a written signature. *See* 5 ILCS 70/1.15.

### 4. The FAA's Section 1 exemption does not apply.

To the extent Plaintiffs seek to avoid this result by relying on the FAA's "Section 1 exemption," they do so in error. Section 1 exempts from the FAA's scope "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Courts apply the Section 1 exemption narrowly to govern only (1) transportation workers (2) belonging to a class of workers who move physical goods in interstate commerce and (3) in an industry that *primarily* involves the actual, physical movement of goods through interstate commerce. *See JetBlue Airways Corp. v. Stephenson*, 2010 WL 6781684, 932 N.Y.S.2d 761 (Sup. Ct. 2010), *aff'd* 931 N.Y.S.2d 284 (2011). Indeed, "**where the transportation of goods is not the bread and butter of the employer's industry**, a plaintiff who does not directly move goods herself is not exempt from the FAA." *Borgonia v. G2 Secure Staff, LLC*, 2019 WL 1865927, at *4 (N.D. Cal. Apr. 25, 2019) (emphasis added). Because (1) Southwest is a passenger airline not primarily involved the transportation of goods across state lines; and (2) Plaintiffs do not themselves move goods in interstate commerce, the Section 1 exemption does not reach their claims.

### a. Southwest operates in the passenger airline industry and is not primarily involved in the movement of goods.

Multiple courts have held that companies in the passenger airline industry are not primarily involved in the movement of goods. In *JetBlue*, for example, the court held that JetBlue pilots were not exempt under Section 1 because they were "passenger" pilots, not "goods" pilots. *JetBlue Airways*, 2010 WL 6781684 at *3. The court explained that "[t]he inclusion or exclusion of these particular pilots from the FAA turns on the definition of the class of worker to which JetBlue pilots belong and the industry in which they work." *Id.* at 2. The court held that they were "passenger airline pilots" and worked in the "passenger airlines"

12

industry because their "primary function" was transporting passengers—not goods—across state lines. *Id.* at *3. The JetBlue pilots thus differed from FedEx pilots, for instance, whose primary function is to carry cargo. *Id.*

In the recent *Borgonia* case, the court likewise held that Section 1 did not exempt plaintiffs who worked at San Francisco International Airport ("SFO") for a company that "provided aviation services such as ground handling, passenger assistance, terminal services, and special services." *Borgonia*, 2019 WL 1865927 at *4. Although plaintiffs worked at SFO— "admittedly a hub for interstate transportation"—nothing in their jobs "involved the interstate deliveries that exist in most cases applying § 1's exclusion." *Id.* Because "the transportation of goods" was not "the bread and butter of [their] employer's industry" and plaintiffs themselves did not move goods across state lines, the Section 1 exemption did not reach them. *Id.*

Like the JetBlue pilots and SFO workers, Plaintiffs do not work in an industry that primarily involves the actual, physical movement of goods through interstate commerce. Southwest is a passenger airline. In 2018, in public filings with the Securities and Exchange Commission, Southwest reported total passenger revenue of $20.45 billion, freight revenue of only $175 million, and "other" revenue of $1.34 billion unrelated to passenger or freight revenue. Passenger revenue thus comprised over 93% of Southwest's 2018 revenue, while freight revenue comprised only 0.8% of Southwest's 2018 revenue.[5]

In addition, the United States Department of Transportation (USDOT) formally classifies Southwest as a passenger airline.[6] According to the USDOT's Bureau of Transportation Statistics (the "BTS"), Southwest was the first-ranked, or largest, U.S.-based passenger airline in

---

[5](https://www.sec.gov/Archives/edgar/data/92380/000009238019000022/luv-12312018x10k.htm, p. 68) (last visited April 8, 2019). The Court may take judicial notice of information made available on government websites. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that the contents of government websites are proper subjects of judicial notice).

[6](https://www.transtats.bts.gov/CarrierList_Passengers.asp?xpage=carriers.asp&flag=NONE) (last visited April 3, 2019).

2018, transporting 159 million passengers.[7] Southwest is excluded from the USDOT's classification of cargo airlines.[8] Thus by any metric, Southwest is a passenger airline—the transportation of goods in interstate commerce is not its "bread and butter." *See Borgonia*, 2019 WL 1865927 at *4.

### b. Plaintiffs do not directly move goods across state lines.

Because Southwest is not primarily involved in transporting goods across state lines, a Southwest employee "who does not directly move goods herself is not exempt from the FAA." *See id.* A recent Northern District case, *Wallace v. Grubhub Holdings, Inc.*, 2019 WL 1399986, at *3–4 (N.D. Ill. Mar. 28, 2019), confirms this. In *Wallace*, the court held that the Section 1 exemption does not apply to Grubhub food delivery drivers because they did not cross state lines and were not completing interstate shipments. *Id.* Reviewing case law, the *Wallace* court noted an important distinction: transportation workers may be exempted under Section 1 "even if they did not personally cross state boundaries" *if* they work for companies **primarily engaged** in transporting goods across state lines. *Id.* at *3 (collecting cases). But Grubhub drivers neither cross state lines personally nor work for a company primarily engaged in transporting goods across state lines. *Id.*; *see also Lee v. Postmates, Inc.*, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018) (plaintiffs did not fall within Section 1 exemption because they failed to "cite any case holding that making only local deliveries, *for a company that does not hold itself out as transporting goods between states*, constitutes engaging in interstate commerce" under the FAA) (emphasis added).

Plaintiffs did not transport goods across state lines. Southwest's Ramp Agent Supervisors have the primary duty of managing non-supervisory Ramp Agents, who are union-represented

---

[7](https://transtats.bts.gov/carriers.asp?pn=1) (select "Southwest Airlines").
[8](https://www.transtats.bts.gov/CarrierList_AllCargo.asp?xpage=carriers.asp&flag=NONE) (last visited April 3, 2019).

and thus subject to collective bargaining agreements. (Ex. A at ¶¶ 5, 13.) The primary duty of a union-represented Ramp Agent is to facilitate the transportation of passengers by loading and unloading passenger belongings and guiding planes to gates. (*Id*. at ¶ 14, Ex. 11.) In 2018 alone, Midway Ramp Agents moved ten times more passenger baggage than cargo. (*Id*. at ¶ 15.) Ramp Agent Supervisors are restricted from performing these duties. (*Id.* at ¶ 16, Ex. 11.) Both positions are based at Midway and operate solely at Midway. (*Id.* at ¶¶ 14–16.) Thus there is no possibility that Plaintiffs, Ramp Agent Supervisors, or the Ramp Agents they oversee, are physically moving goods across state lines. Put simply, the FAA compels arbitration of Plaintiffs' claims.

### C.  Plaintiffs Crooms, Lopez, and Hill also must honor their agreement, separate from the ADR Program, to arbitrate their BIPA claims.

Separate and apart from their employment agreements, Plaintiffs Crooms, Lopez, and Hill entered into an agreement with Southwest to individually arbitrate their BIPA claims. *See supra* at 5. That agreement is enforceable through this motion to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 807 ("[A] motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)."). It is well established that, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 25. But there is not even a doubt here. The Agreement here expressly provides for the arbitration of these Plaintiffs' BIPA claims. (Ex. C at ¶¶ 2–3, 18.) Therefore, the claims should be dismissed under Rule 12(b)(3).

## V.  CONCLUSION

Three independent sources of authority require Plaintiffs' claims to be arbitrated. Thus, Southwest respectfully requests that the Court dismiss Plaintiffs' claims for improper venue or, alternatively, stay this suit pursuant to 9 U.S.C. § 3 pending individual arbitration.

Dated:  May 3, 2019                    Respectfully submitted,

                                       SOUTHWEST AIRLINES CO.

                                       By:  /s/ Melissa A. Siebert

                                       Melissa A. Siebert (*masiebert@shb.com*)
                                       Erin Bolan Hines (*ehines@shb.com*)
                                       SHOOK, HARDY & BACON LLP
                                       111 South Wacker Drive
                                       Chicago, Illinois 60606
                                       Tel:  (312) 704-7700
                                       Fax:  (312) 558-1195

                                       *Counsel for Defendant Southwest Airlines Co.*

16

**CERTIFICATE OF SERVICE**

I certify that, on May 3, 2019, the foregoing was filed with the Court using the Court's electronic case filing system, which will send notification to all registered users.

Dated:  May 3, 2019                                    /s/ Melissa A. Siebert

*Counsel for Defendant Southwest Airlines Co.*